*14-97-bk(L)*
*In re: Bernard L. Madoff Investment Securities LLC*

# In the
# United States Court of Appeals
## For the Second Circuit

————————————

August Term, 2014
Nos. 14-97-bk(L), 14-509-bk(con), 14-510-bk(con), 14-511-bk(con),
14-512-bk(con)

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

————————————

SECURITIES INVESTOR PROTECTION CORPORATION,
*Plaintiff-Appellee,*

*v.*

2427 PARENT CORPORATION ET AL., ESTATE OF DORIS M. PEARLMAN
(IRA), HAROLD J. HEIN ET AL., LILLIAN BERMAN GOLDFARB ET AL.,
MBE PREFERRED LIMITED PARTNERSHIP ET AL., HHI INVESTMENT
TRUST #2, MELVYN I. WEISS AND BARBARA J. WEISS ET AL., MICHAEL
MOST, THE KOSTIN CO., MARSHA PESHKIN ET AL.,
*Claimants-Appellants,*

IRVING H. PICARD,
*Trustee-Appellee.*

————————————

Appeal from the United States Bankruptcy Court
for the Southern District of New York.
No. 08-1789 — Burton R. Lifland, *Judge.*

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

————————————

ARGUED: OCTOBER 14, 2014
DECIDED: FEBRUARY 20, 2015

————————————

Before: STRAUB, WESLEY, and LIVINGSTON, *Circuit Judges*.

————————————

Appeal from an order of the United States Bankruptcy Court for the Southern District of New York (Burton R. Lifland, *Judge*), approving the calculation of "net equity" claims under the Securities Investor Protection Act without an adjustment for inflation or interest and overruling claimant objections. We hold that the Securities Investor Protection Act does not permit an inflation or interest adjustment to "net equity" claims for customer property. Accordingly, we **AFFIRM**.

————————————

P. GREGORY SCHWED, (Walter H. Curchack, Daniel B. Besikof, Michael Barnett, *on the brief*), Loeb & Loeb LLP, New York, NY, *for Claimants-Appellants MBE Preferred Limited Partnership et al.*

RICHARD A. KIRBY, (Laura K. Clinton, Scott P. Lindsay, *on the brief*), K&L Gates LLP, Washington, DC, *for Claimant-Appellant Estate of Doris M. Pearlman (IRA).*

PAULA J. WARMUTH, Stim & Warmuth, P.C., Farmingville, NY, *for Claimant-Appellant Michael Most.*

-2-

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

Matthew Gluck, Matthew A. Kupillas, Jennifer Young, Milberg LLP, New York, NY, Parvin Aminolroaya, Seeger Weiss LLP, New York, NY, *for Claimants-Appellants 2427 Parent Corporation et al.*

Parvin Aminolroaya, Seeger Weiss LLP, New York, NY, *for Claimants-Appellants Melvyn I. Weiss and Barbara J. Weiss et al.*

Carole Neville, Dentons US LLP, New York, NY, *for Claimants-Appellants Harold J. Hein et al.*

Philip Bentley, Elise S. Frejka, Kramer Levin Naftalis & Frankel LLP, New York, NY, *for Claimants-Appellants Lillian Berman Goldfarb et al.*

Marcy Ressler Harris, Jennifer M. Opheim, Mark D. Richardson, Schulte Roth & Zabel LLP, New York, NY, *for Claimant-Appellant HHI Investment Trust #2.*

Bernard J. Garbutt III, Morgan, Lewis & Bockius LLP, New York, NY, *for Claimant-Appellant The Kostin Co.*

Helen Davis Chaitman, Peter W. Smith, Julie Gorchkova, Becker & Poliakoff, LLP, New York, NY, *for Claimants-Appellants Marsha Peshkin et al.*

JOSEPHINE WANG, General Counsel, (Kevin H. Bell, Senior Associate General Counsel for Dispute Resolution, Christopher H. Larosa, Senior Associate General Counsel - Litigation, Lauren T. Attard, Assistant General Counsel, *on*

-3-

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

---

*the brief*), Securities Investor Protection Corporation, Washington, DC, *for Plaintiff-Appellee Securities Investor Protection Corporation.*

SEANNA R. BROWN, (David J. Sheehan, Jorian L. Rose, Amy Elizabeth Vanderwal, *on the brief*), Baker & Hostetler LLP, New York, NY, *for Plaintiff-Appellee Irving H. Picard, as Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff.*

---

STRAUB, *Circuit Judge*:

The issue presented in this appeal is whether the Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et seq.* ("SIPA" or "the Act"), permits an inflation or interest adjustment to "net equity" claims for customer property. We hold that it does not.

Claimants-Appellants ("Claimants") are former investors of Bernard L. Madoff Investment Securities LLC ("BLMIS"). Trustee-Appellee Irving H. Picard ("Trustee") was appointed, pursuant to SIPA, as trustee for the liquidation of BLMIS.

-4-

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

SIPA prioritizes the distribution of customer property in a broker-dealer liquidation.  The Act creates a fund of customer property for priority distribution exclusively among a failed broker-dealer's customers, and customers share in the fund proportionally, according to each customer's "net equity."

Because Madoff's fraud lasted at least three decades, Claimants ask that the Trustee adjust their proportional share of customer property to reflect inflation; one Claimant also asks for an interest adjustment, to reflect the time-value of money.  We agree with the Trustee and the Bankruptcy Court, however, that SIPA does not permit an inflation or interest adjustment to net equity claims.  Accordingly, we affirm the order of the United States Bankruptcy Court for the Southern District of New York (Burton R. Lifland, *Judge*), approving the Trustee's unadjusted net equity calculation and overruling Claimants' objections.

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

**BACKGROUND**

We described Bernard Madoff's fraud in a previous appeal in this case. *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231–33 (2d Cir. 2011) ("*Net Equity Decision*"), *cert. dismissed*, 132 S. Ct. 2712, *cert. denied*, 133 S. Ct. 24, *and* 133 S. Ct. 25 (2012). Briefly stated, although Claimants gave money to Madoff for investment, Madoff never invested the customer funds. *Id.* at 231. To conceal his complete lack of trading activity on behalf of his investors, Madoff created fictitious paper account statements and trading records. *Id.* The customer account statements listed purported securities transactions, but they did not reflect any actual trading or holdings of securities by Madoff on behalf of the customer. *Id.* at 231–32. Madoff instead funded customer withdrawals with the principal investments of new and existing customers. *Id.* at 232. The only accurate entries in Madoff's customer statements were those that reflected the customers' cash deposits and withdrawals. *Id.*

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

After the collapse of BLMIS, the Trustee was appointed pursuant to SIPA. *Id.* at 233. SIPA was enacted in 1970 as a response to "a rash of failures among securities broker-dealers" that caused significant losses to customers whose assets "were unrecoverable or became tied up in the broker-dealers' bankruptcy proceedings." *In re New Times Sec. Servs., Inc.*, 371 F.3d 68, 84 (2d Cir. 2004) (internal quotation marks omitted) ("*New Times I*"). The Act creates procedures for liquidating failed broker-dealers and provides their customers special protections. *Net Equity Decision*, 654 F.3d at 233.

SIPA is designed to return customer property to customers. *See* 1 Collier on Bankruptcy ¶ 12.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014) (noting that the return of customer property is SIPA's "fundamental premise"). In a SIPA liquidation, a fund of customer property, separate from the broker-dealer's general estate, is established for priority distribution exclusively among customers. *Net Equity Decision*, 654 F.3d at 233. Customer

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

property consists of "cash and securities … received, acquired, or held" by the broker-dealer "for the securities accounts" of customers, except securities registered in the names of individual customers.  15 U.S.C. § 78*lll*(4).

Customers of the broker-dealer "share ratably in" the fund of "customer property on the basis and to the extent of their respective net equities."  *Id.* § 78fff-2(c)(1)(B).  The larger the customer's net equity, the greater the customer's share of the fund of customer property.  1 Collier, *supra*, ¶ 12.14.  SIPA defines net equity, in relevant part, as:

> [T]he dollar amount of the account or accounts of a customer, to be determined by … calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date … all securities positions of such customer … minus … any indebtedness of such customer to the debtor on the filing date ….

15 U.S.C. § 78*lll*(11).  Payments to customers based on net equity are made insofar as the amount owed to the customer is "ascertainable

-8-

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

from the books and records of the debtor or [is] otherwise established to the satisfaction of the trustee." *Id.* § 78fff-2(b); *see also Net Equity Decision*, 654 F.3d at 237.

SIPA guarantees customers a minimum amount of recovery. When a customer's ratable share of the recovered customer property is insufficient to satisfy his or her net equity claim, the customer's claim can be supplemented by the Securities Investor Protection Corporation ("SIPC"), which was created by SIPA and administers a fund capitalized by the brokerage community. *See* 15 U.S.C. §§ 78ccc, 78ddd. The SIPC advances to the SIPA trustee up to $500,000 per customer, *see id.* § 78fff-3(a), except that the advance for a customer's "claim for cash" cannot exceed $250,000, *see id.* §§ 78fff-3(a)(1), (d). To the extent that "customer property and SIPC advances" are insufficient to satisfy a customer's full net equity claim, the customer is "entitled … to participate in the general estate" as an unsecured creditor. *Id.* § 78fff-2(c)(1).

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In the *Net Equity Decision*, we held that Madoff's investors are "customers" with "claims for securities" under SIPA. 654 F.3d at 236. We also addressed how net equity should be calculated in this case, given that SIPA's definition of net equity references "securities positions" but Madoff never invested customer funds. We rejected the argument of various customers that their claims should be based on the amounts listed in their last BLMIS account statement. *Id.* We observed that reliance on Madoff's false statements to determine net equity "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations." *Id.* at 235. Instead, we upheld as a matter of law the Trustee's determination that net equity should be calculated by the amount that a customer deposited into his or her BLMIS account, less any amount that he or she withdrew from the account. *Id.* at 233, 236–42 & 238 n.7. We declined to address, however, whether the calculation of net equity should be adjusted to

-10-

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

account for inflation or interest, because the Bankruptcy Court had

not yet addressed the issue. *Id.* at 235 n.6.

Afterward, the Trustee and the SIPC argued to the Bankruptcy

Court that SIPA does not permit adjustments for inflation or interest

to customers' net equity claims. Various claimants objected, some

seeking just an inflation adjustment, others an interest adjustment.

The Securities and Exchange Commission ("SEC"), which has

"plenary authority to supervise the SIPC," *SIPC v. Barbour*, 421 U.S.

412, 417 (1975) (internal quotation marks omitted), disagreed with

the Trustee and the SIPC and contended that net equity could be

adjusted to account for inflation. The SEC argued before the

Bankruptcy Court that adjusting for inflation would be "an accurate

way to calculate customer net equity under the narrow set of factual

circumstances presented here," although it acknowledged that "the

decision to make such an adjustment must rest on the Court's

consideration of the costs and benefits of doing so." SEC Mem. of

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

Law at 4, *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 08-01789-smb

(Bankr. S.D.N.Y. Dec. 10, 2012), ECF No. 5142.  However, in a

colloquy with the Bankruptcy Court, the SEC's lawyer, when asked

what kind of deference he sought, stated that the SEC was "actually

not asking for deference."

The Bankruptcy Court upheld the Trustee's determination

that no adjustment for inflation or interest could be made under

SIPA.  The court ruled that, as a matter of law, SIPA did not permit a

time-based adjustment to net equity.  It then certified an immediate

appeal of its decision pursuant to 28 U.S.C. § 158(d)(2).  We granted

the petition for direct appeal.

**DISCUSSION**

We review *de novo* the legal conclusions of the Bankruptcy

Court, including its interpretation of SIPA.  *Net Equity Decision*, 654

F.3d at 234.  Claimants contend that the Bankruptcy Court erred in

concluding that SIPA does not allow an inflation adjustment to net

equity claims for customer property.  They also assert that the SEC's

-12-

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

support for an inflation adjustment is entitled to *Skidmore* deference.
We disagree.

## I.  An Inflation Adjustment to Customer Net Equity Claims Is Impermissible Under SIPA

According to Claimants, without an inflation adjustment, the
claims of Madoff's earlier investors are unfairly undervalued when
compared to the claims of Madoff's later investors.  Although SIPA's
text does not provide for an inflation adjustment to net equity,
Claimants urge us to construe SIPA to permit trustee discretion to
make such an adjustment.  But we conclude that an inflation
adjustment to net equity is not permissible under SIPA.  An inflation
adjustment goes beyond the scope of SIPA's intended protections
and is inconsistent with SIPA's statutory framework.

SIPA does not address the possibility of an inflation
adjustment to net equity.  The Act's definition of net equity makes
no mention of inflation, *see* 15 U.S.C. § 78*lll*(11), whereas other, albeit
unrelated, portions of SIPA do, *see, e.g., id.* § 78fff-3(e) (providing

-13-

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

procedures for the SIPC to periodically "determine whether an

inflation adjustment to the standard maximum cash advancement

amount is appropriate").  And although SIPA instructs that

customer securities are valued, for purposes of calculating net

equity, as though they were liquidated "on the filing date,"

*id.* §§ 78*lll*(11)(A), (B), this does not indicate that cash deposited but

never invested is to be adjusted for inflation.[1]

　　　　SIPA's silence is unsurprising.  In a typical broker-dealer

failure, an inflation adjustment to net equity would be nonsensical;

where securities are actually purchased for a broker-dealer's

customers, the securities have values that already incorporate

economic circumstances such as inflation.  SIPA's supposed purpose

---

[1] The "filing date" is typically the date that the SIPC brings an application in court for a protective decree because the broker-dealer's customers need SIPA protection.  *See* 15 U.S.C. §§ 78eee(a)(3), 78*lll*(7).  The term is used throughout SIPA, *e.g.*, *id.* § 78fff(c) (determination of customer status); *id.* § 78fff-2(d) (trustee's purchase of securities to replace customer securities); *id.* § 78*lll*(3) (defining "customer name securities"), and it facilitates the return to customers of their investments as they were just before liquidation.  Here, Claimants' net equities are valued as of the "filing date" by incorporating prior deposits and withdrawals.

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

was to remedy broker-dealer insolvencies—not necessarily broker-dealer fraud. *See* H.R. Rep. No. 91-1613, at 1 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5254, 5255 ("The primary purpose of [SIPA] is to provide protection for investors if the broker-dealer with whom they are doing business encounters financial troubles."). Hence, as we noted in the *Net Equity Decision*, SIPA does not specify how net equity should be calculated in a case like this, in which a dishonest broker failed to invest customer funds. 654 F.3d at 237–38. We determined that "the statutory language does not prescribe a single means of calculating 'net equity' that applies in the myriad circumstances that may arise in a SIPA liquidation," and "[d]iffering fact patterns will inevitably call for differing approaches to ascertaining the fairest method for approximating 'net equity.'" *Id.* at 235.

The flexibility espoused in the *Net Equity Decision*, though, has no relevance to this case. The *Net Equity Decision* stated "no view"

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

on whether the Trustee's method for calculating net equity "should be adjusted to account for inflation or interest." *Id.* at 235 n.6. Although we suggested, in dicta, that a SIPA trustee should "exercise some discretion" in selecting "a method to calculate 'net equity,'" and a reviewing court should "accord a degree of deference" to the method chosen, *id.* at 238 n.7, that standard is inapplicable here: We conclude that SIPA's scheme disallows an inflation adjustment as a matter of law.

As we emphasized previously, SIPA is intended to expedite the return of customer property. *Id.* at 240. Without SIPA, customer funds and securities held by a failed brokerage could become "depleted or enmeshed in bankruptcy proceedings." *See SEC v. SIPC*, 758 F.3d 357, 362–63 (D.C. Cir. 2014). SIPA "addresses that issue by protecting the *custody* function of brokers." *Id.*; *see also* 1 Collier, *supra*, ¶ 12.01 (explaining that SIPA protects investors against losses "resulting from the failure of an insolvent or

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

otherwise failed broker-dealer to properly perform its role as the

custodian of customer cash and securities"). Net equity claims are

thus linked directly to the customer property held by a broker-

dealer; SIPA instructs a trustee to process claims to the extent that

they are ascertainable from the broker-dealer's books and records or

otherwise established to the trustee's satisfaction. *See* 15 U.S.C.

§ 78fff-2(b). BLMIS's books and records reflected only funds

deposited and withdrawn, without any time-based adjustment, *see*

Brief for Trustee-Appellee at 7, 23, and these deposits, less

withdrawals, constitute customer property in this case, *see Net Equity*

*Decision*, 654 F.3d at 240; 15 U.S.C. § 78*lll*(4) (defining "customer

property," in relevant part, as "cash and securities … received,

acquired, or held" by the broker-dealer "for the securities accounts"

of customers).

Although SIPA defends investors from a broker-dealer's

failure to perform its custodial role over customer property, it does

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

not otherwise shield investors from loss. Instead, the Act merely

restores investors to what their position would have been in the

absence of liquidation. We have noted that SIPA's scheme "assumes

that a customer—as an investor in securities—wishes to retain his

investments despite the liquidation of the broker; the statute thus

works to expose the customer to the same risks and rewards that

would be enjoyed had there been no liquidation." *In re New Times*

*Sec. Servs., Inc.*, 463 F.3d 125, 128 (2d Cir. 2006) ("*New Times II*")

(internal quotation marks omitted). Hence, SIPA instructs a trustee,

in many circumstances, to provide customers with securities in kind

instead of a cash equivalent. *See* 15 U.S.C. §§ 78fff-1(b)(1), 78fff-

2(b)(2); *see also id.* § 78fff-2(d) (providing that the trustee "shall, to

the extent that securities can be purchased in a fair and orderly

market, purchase securities as necessary for the delivery of securities

to customers in satisfaction of their claims for net equities").

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

SIPA likewise provides customers with no compensation for the lost use of their securities or cash while liquidation is pending. Customer securities, whether returned in kind or as a cash equivalent, are valued as of the filing date, regardless of any subsequent fluctuations in value.  *See* 15 U.S.C. §§ 78fff-2(b), (c)(1). This may harm an investor if the securities fall in value, but avoidance of loss beyond restoration of the pre-failure status quo is not SIPA's goal.  *See* 6 Collier, *supra*, ¶ 741.06 ("[I]n a SIPA liquidation, customers are at risk for market loss.").  Although the securities and cash have opportunity costs that are denied to the investor during liquidation, and although the cash similarly may have lost purchasing power in an inflationary economy, SIPA returns to the customer the nominal pre-liquidation balance.  *Cf. SIPC v. Ambassador Church Fin./Dev. Grp., Inc.*, 788 F.2d 1208, 1210–12 (6th Cir.) (denying claims brought to recover post-bankruptcy petition interest for the "seven and one-half year period that the

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

SIPC had delayed in paying" investors' claims, in part because "the definition of 'net equity' does not include interest"), *cert. denied*, 479 U.S. 850 (1986).

Claimants assert that adjusting net equity claims for inflation is the fairest method of determining net equity. Yet, we have explained that "SIPA was not designed to provide full protection to all victims of a brokerage collapse," and "arguments based solely on the equities are not, standing alone, persuasive." *SEC v. Packer, Wilbur & Co.*, 498 F.2d 978, 983 (2d Cir. 1974). Contrary to Claimants' assertion, moreover, an unadjusted distribution of customer property is not unjust. In fact, we recently found no abuse of discretion in a district court's approval, over objection, of a receiver's distribution plan to the victims of a Ponzi scheme that lasted thirteen years, even though the distribution provided no adjustment for inflation. *See Commodity Futures Trading Comm'n v. Walsh*, 712 F.3d 735, 738–39, 754–55 (2d Cir. 2013); *cf. also New Times*

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

*I*, 371 F.3d at 88 (agreeing that net equity was "properly calculated

as the amount of money" initially placed with the Ponzi scheme

brokerage, without noting the possibility of an inflation adjustment).

Because it is doubtful that the full amount of customer

property will be recovered in this case,[2] each dollar allocated to

earlier investors in recognition of inflation reduces the amount of

principal recovered by later investors. Even if all customer property

were miraculously recovered, it would be insufficient to satisfy

customer claims to the extent such claims were increased to reflect

inflation. An inflation adjustment to net equity claims could allow

some customers to obtain, in effect, a protection from inflation for

---

[2] The Trustee has stated that he is unlikely to recover the full amount of lost customer money. *See* U.S. Gov't Accountability Office, GAO-12-991, *Securities Investor Protection Corporation: Customer Outcomes in the Madoff Liquidation Proceeding* 6 (2012). Almost $20 billion in principal was lost in Madoff's scheme, approximately $17.5 billion of which was lost by those who have filed claims with the Trustee. *See* Trustee's Twelfth Interim Report for the Period Ending September 30, 2014, at 1 n.3, *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 08-01789-smb (Bankr. S.D.N.Y. Oct. 27, 2014), ECF No. 8276. As of late 2014, the Trustee had recovered roughly $10 billion. *See id.* at 1; *see also* http://www.madofftrustee.com. At oral argument in this appeal, the SIPC also predicted a shortfall in the amount of customer property recovered.

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

which they never bargained, in contravention of the text and

purpose of SIPA, and at the expense of customers who have not yet

recovered the property they placed in Madoff's hands.[3]

The purpose of determining net equity under SIPA is to

facilitate the proportional distribution of customer property actually

held by the broker, not to restore to customers the value of the

property that they originally invested.  We thus previously

concluded that in this case net equity could not be based on fictitious

customer statements but instead should be determined based on

customers' actual deposits and withdrawals.  *See Net Equity Decision*,

654 F.3d at 235.  These deposits, net withdrawals, constitute

---

[3] An adjustment to reflect deflation in the economy—rather than inflation—would also be inconsistent with SIPA's scheme.  A deflation adjustment would prevent customers from obtaining priority return of the full amount of their customer property.

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

customer property here. Under SIPA, Claimants' net equity claims cannot be adjusted to reflect inflation.[4]

## II.    The SEC's View is Not Entitled to Deference

In reaching this decision, no deference is owed to the SEC's view. The SEC submitted a brief and participated in oral argument before the Bankruptcy Court in support of the position that SIPA permits adjustments for inflation to net equity claims.[5] At the hearing on this issue before the Bankruptcy Court, however, the SEC stated that it was "not claiming *Chevron* deference."[6] The SEC even

---

[4] To be clear, our holding is limited to a post-liquidation adjustment of customers' net equity calculations. Obviously, if a customer's *pre*-liquidation account contained earnings from holdings that awarded interest or were protected against inflation, for instance, the customer's claim for net equity would include those earnings, because they "would have been owed by the debtor to such customer if the debtor had liquidated … all securities positions of such customer." 15 U.S.C. § 78*lll*(11).

[5] During an appearance before the House of Representatives Subcommittee on Capital Markets in 2009, the SEC's Deputy Solicitor similarly contended that distributions to Madoff's investors should reflect inflation. *See* Statement of Michael A. Conley, *Madoff Ponzi Scheme, Capital Markets, Ins. & Gov't Sponsored Enters., House Fin. Servs.*, 2009 WL 4647561 (Dec. 9, 2009).

[6] "*Chevron* deference is given to an administrative implementation of a statute when it appears that Congress delegated authority to the agency generally to

-23-

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

said more generally that it was "not asking for deference here," but

that, "[i]f [it] were asking for deference … it would be *Skidmore*

deference." The SEC has not filed a brief in this appeal, even though

SIPA provides that the SEC "may, on its own motion, file notice of

its appearance in any proceeding under this chapter and may

thereafter participate as a party." 15 U.S.C. § 78eee(c). Claimants

nonetheless contend that the SEC's position warrants *Skidmore*

deference.

In *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), the Supreme

Court held that "an agency's interpretation may merit some

deference whatever its form, given the 'specialized experience and

broader investigations and information' available to the agency, and

given the value of uniformity in its administrative and judicial

---

make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Barrows v. Burwell*, No. 13-4179, __ F.3d __, 2015 WL 264727, at *1 n.6 (2d Cir. Jan. 22, 2015) (internal quotation marks omitted); *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

understandings of what a national law requires." *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (internal citation omitted) (quoting *Skidmore*, 323 U.S. at 139). *Skidmore* deference is a "more limited standard of deference" than *Chevron* deference. *New Times I*, 371 F.3d at 83. An agency's interpretations "are 'entitled to respect'" under *Skidmore*, "but only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (quoting *Skidmore*, 323 U.S. at 140). In determining whether to defer to an agency's interpretation under *Skidmore*, we consider "the agency's expertise, the care it took in reaching its conclusions, the formality with which it promulgates its interpretations, the consistency of its views over time, and the ultimate persuasiveness of its arguments." *New Times I*, 371 F.3d at 83 (internal quotation marks omitted).

These factors do not support deference to the SEC's interpretation. The position that the SEC took before the Bankruptcy

Court in this case is novel, inconsistent with its positions in other cases, and ultimately unpersuasive.  *Cf. SEC v. SIPC*, 872 F. Supp. 2d 1, 10 (D.D.C. 2012) (holding that the SEC's view on a distinct issue of SIPA interpretation was entitled "to little, if any, deference" where it contradicted the SEC's longstanding view), *aff'd*, 758 F.3d 357 (D.C. Cir. 2014).

The SIPC explains that, in more than three hundred SIPA liquidations prior to this one, the SEC has not once suggested that the amount of customer claims subject to satisfaction with cash should be adjusted to reflect inflation.  *See* Brief for Plaintiff-Appellee SIPC at 43.  In this case, the SEC asserted that adjusting claims for inflation would provide the most accurate valuation, yet it recently opposed an inflation adjustment in a different long-lasting Ponzi scheme.  *See Walsh*, 712 F.3d at 744.  In *Walsh*, which addressed a court-appointed receiver's proposed distribution, the SEC argued that an unadjusted distribution was "the best and most fair

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

approach" under the circumstances, "because it yields a substantial

recovery for all investors." *Id.* (quoting the SEC's joint

recommendation with the Commodity Futures Trading

Commission). Although the SEC's position in *Walsh* noted that an

inflation adjustment might be "appropriate in certain instances," *id.*,

the reason stated for eschewing an adjustment in *Walsh* was the lack

of assets to fully satisfy each investor's claim, *see id.*, which is

expected to be the case here as well.[7] Nor do we ultimately find the

SEC's brief before the Bankruptcy Court to be convincing. It echoes

Claimants' contentions that we reject here.

---

[7] In oral argument before the Bankruptcy Court, the SEC admitted the incongruence of its stance in *Walsh* and its contentions to the Bankruptcy Court. *See* Transcript of Sept. 10, 2013, Hearing at 25, *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 08-01789-smb (Bankr. S.D.N.Y. Sept. 10, 2013), ECF No. 5476 ("We acknowledge that this is a position that we're taking in this litigation and as you pointed out, a different position was taken in the *Walsh* case.").

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC

**III.  An Interest Adjustment to Customer Net Equity Claims Is Also Impermissible Under SIPA**

In this appeal, only one Claimant seeks an adjustment for interest, in addition to inflation; all other Claimants seek an adjustment solely for inflation.  The SEC likewise argued only for an inflation adjustment.  For the same reasons stated above with respect to an inflation adjustment, *supra* Section I, we find that that an interest adjustment to customer net equity claims is impermissible under SIPA's scheme.

## CONCLUSION

For the foregoing reasons, we affirm the order of the United States Bankruptcy Court for the Southern District of New York and hold that SIPA does not permit an inflation or interest adjustment to "net equity" claims.